UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| LESTER W. UTLEY, | ) |
| Plaintiff, | ) |
| v. | ) 15-cv-03324 |
| PRAIRIE POWER, INC., | ) |
| Defendant. | ) |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge:**

Before the Court is Defendant's Motion to Dismiss Plaintiff's Complaint Pursuant to Fed.R.Civ.P. 12(b)(6) (d/e 5), Plaintiff's Motion for a Status Conference (d/e 10), and Plaintiff Counsel's Motion to Withdraw (d/e 11).  Defendant's Motion to Dismiss (d/e 5) is GRANTED because Plaintiff's claim is time-barred.  Plaintiff's Motion for a Status Conference (d/e 10) and Plaintiff Counsel's Motion to Withdraw (d/e 11) are DENIED AS MOOT.

### I. BACKGROUND

On November 20, 2015, Plaintiff Lester W. Utley filed a Complaint in this Court, claiming breach of fiduciary duty under ERISA.  On December 22, 2015, Defendant Prairie Power, Inc.

moved to dismiss the Complaint under Fed.R.Civ.P. 12(b)(6), arguing that (1) Plaintiff's claim is barred by the statute of limitations; (2) Plaintiff's claim for breach of fiduciary duty fails as a matter of law; and (3) Plaintiff failed to exhaust administrative remedies as required by ERISA.

The following information is taken from the allegations in and the exhibits attached to the Complaint, which the Court must accept as true when ruling on a Motion to Dismiss.

Plaintiff is and has been a resident of Jacksonville, Illinois at all relevant times. Defendant is and has been located in Illinois at all relevant times. Plaintiff was an employee of Western Illinois Power Cooperative Association, Inc. (WIPCO) for many years prior to January 25, 1989. Defendant is a successor corporation to WIPCO. In 1989, due to WIPCO's upcoming merger with Soyland Power, Plaintiff was no longer going to have a position at the company. As a result, Plaintiff and Defendant entered into an early retirement agreement. See Exh. 1 to Compl. (d/e 1-1).

Plaintiff agreed to retire. Defendant agreed: (1) that Plaintiff shall be eligible for a pension as provided under WIPCO's retirement plan through National Rural Electric Cooperative Association

(NRECA); (2) that Defendant shall pay Plaintiff severance in the sum of $35,000; (3) that Plaintiff shall receive payment for any accrued but unused vacation; (4) that Plaintiff shall remain eligible for WIPCO's medical benefits for the time permitted in the plan for retiring employees; and (5) that Defendant's employee Dean Searls or Edward H. Williams shall, upon request, provide a letter of recommendation for Plaintiff to any prospective employer.  Plaintiff performed all conditions of the agreement that were required of him.  On December 28, 1988, Plaintiff signed a Notice of Termination, Retirement, or Transfer form, requesting that all of his benefits under the NRECA retirement plan be paid to him in a lump sum, without tax withholding.[1]  See Exh. B to Compl. (d/e 1-2) at 3.  On the same date, Plaintiff's wife signed a Spousal Waiver form, in which she consented to Plaintiff receiving his benefits in a lump sum rather than through a monthly joint and survivor spouse annuity.  See id. at 4.

---

1 Plaintiff's NRECA retirement plan consists of two accounts: (1) a Retirement & Savings Account; and (2) a 401(k) account (also referred to as a "Savings Plan," a name by which 401(k) accounts were known at the time).  Hereinafter, the Court will refer to the two accounts together as Plaintiff's "pension accounts."

Defendant's employee and office manager Charles Heacox had the responsibility to procure the disbursement checks for Plaintiff's pension accounts. Heacox received all correspondence from NRECA's bank concerning the checks for Plaintiff's disbursements. Therefore, Heacox would have received Plaintiff's checks "if and when they were received." Compl. (d/e 1) at ¶15. In August of 1988, Plaintiff was contacted by Wayne Harms for the purpose of obtaining information about Heacox, who had applied for a job with Harms' company. Plaintiff gave Heacox a "very unfavorable recommendation." Id. at ¶16. After learning of the recommendation, Heacox "came to Plaintiff's office and made very vulgar and obscene comments and threats directed to Plaintiff." Id.

On or about January 25, 1989, Heacox told Plaintiff that Plaintiff's disbursement checks were in the mail and that Plaintiff should not be overly concerned because Plaintiff was only going to receive about $2,000. At no time did Heacox accurately advise Plaintiff of the value of his pension accounts. After January 25, 1989, Plaintiff made repeated requests to Heacox concerning the checks due to Plaintiff.

More than twenty-five years later, on September 24, 2014, Plaintiff received an email from NRECA employee Sarah N. Lempka, which included documentation related to Plaintiff's 1989 request for disbursement of the funds from his pension accounts. See Exh. B to Compl. (d/e 1-2). The documents Lempka sent Plaintiff included: (1) a form stating that disbursement from Plaintiff's Retirement & Savings account in the amount of $88,594.72 was ordered on February 2, 1989; (2) a benefit statement showing that, on January 25, 1989, Plaintiff's 401(k) had a balance of $2,267.86; and (3) a "January 25" internal note from a NRECA employee, referring to Plaintiff's 401(k), stating that, "[p]er a conversation with Charles Heacox," Heacox asked NRECA to "hold up payment of [Plaintiff] due to a discrepancy with [Plaintiff's] account" and stating in a separate part of the note "[o]kay to pay out." Id. Prior to receiving this information, Plaintiff was not aware whether checks for the disbursement of his pension accounts had been ordered and Plaintiff was not aware of the specific amount of money that Plaintiff should have received from the disbursement of his pension accounts.

Plaintiff claims that Heacox "violated his fiduciary duty to procure and deliver" Plaintiff's checks and, "as a direct and proximate result" of Heacox's conduct, Plaintiff has been deprived of the funds in his pension accounts, has lost income from interest on that money, and has incurred attorney's fees and costs. See Compl. (d/e 1) at ¶17, ¶22.

## II. LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Plausibility means alleging factual content that allows a court to reasonably infer that the defendant is liable for the alleged misconduct. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007). The allegations in the complaint "must actually *suggest* that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level." Windy City Metal Fabricators & Supply, Inc. v. CIT Technology Financing Services, 536 F.3d 663, 668 (7th Cir. 2008) (emphasis in original). The Court "accept[s] as true all of the well-pleaded facts in the complaint and draw[s] all reasonable inferences in favor of the plaintiff." Id.

"A statute of limitations provides an affirmative defense, and a plaintiff is not required to plead facts in the complaint to anticipate and defeat affirmative defenses." Independent Trust Corp. v. Stewart Information Services Corp., 665 F.3d 930, 935 (7th Cir. 2012). However, if the plaintiff's complaint "sets out all of the elements of an affirmative defense, dismissal under Rule 12(b)(6) is appropriate." Id.

## ANALYSIS

Plaintiff claims that Heacox breached his fiduciary duty to Plaintiff by failing to procure and deliver Plaintiff's checks for the funds disbursed from Plaintiff's pension accounts. Plaintiff further claims that Defendant is liable for Heacox's conduct. Plaintiff's claim for breach of fiduciary duty is time-barred because the statute of limitations expired well before Plaintiff filed his Complaint in this Court. Part 4 of ERISA, which covers "Fiduciary Responsibility," provides a specific statute of limitations. See 29 U.S.C. § 1113. This "Limitation of Actions" clause provides that that a claim for breach of fiduciary duty may not be commenced after the earlier of:

> (1) Six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach, or
>
> (2) Three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
>
> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

See id. Plaintiff does not allege that Heacox used fraud or concealment to prevent Plaintiff from discovering Heacox's alleged breach but, rather, Plaintiff alleges only that Heacox failed in his duty to procure and deliver Plaintiff's disbursement checks.[2] Therefore, the statute of limitations for Plaintiff's claim expires on the earlier of: (1) six years after the "latest date" that Heacox could have cured the omission; or (2) three years after Plaintiff had "actual knowledge" of the breach. Id.  In Plaintiff's case, the three-year clock in subsection (2) applies and that three-year clock expired prior to the date that Plaintiff filed this action.

When the three-year clock applies, the statute of limitations begins to run at the point that the plaintiff has "actual knowledge" of the "breach or violation." See Martin v. Consultants &

---

[2] Even if Plaintiff pleaded fraud or concealment, Plaintiff's claim would still be time-barred because Plaintiff filed his claim more than "six years after the date of discovery of [the] breach." 29 U.S.C. § 1113

Page 8 of 17

Administrators, Inc., 966 F.2d 1078, 1084 (7th Cir. 1992).  Plaintiff alleges that Heacox breached his fiduciary duty to ensure the fulfillment of Plaintiff's request for disbursement of his pension accounts, which Plaintiff made on December 28, 1988.  Plaintiff filed this lawsuit on November 20, 2015.  Therefore, Plaintiff's claim is time-barred if Plaintiff had "actual knowledge" that Heacox failed to fulfill Plaintiff's request for disbursement prior to November 20, 2012.

In Plaintiff's Complaint, he appears to suggest that he did not have "actual knowledge" of the "breach" until he received the email from Lempka.  Plaintiff makes a specific allegation that he did not know that NRECA ordered checks for disbursement of Plaintiff's pension accounts prior to receiving the email from Lempka.  However, Plaintiff had "actual knowledge" of Heacox's failure to fulfill Plaintiff's disbursement request in 1989.

The Seventh Circuit has stated that "[i]t is difficult to say in the abstract precisely what constitutes 'actual knowledge,'" except that "actual knowledge must be distinguished from constructive knowledge."  Martin, 966 F.2d at 1086.  The "most concise definition" of actual knowledge is "knowledge of the essential facts

of the transaction or conduct constituting the violation, with the caveat that it is not necessary for a potential plaintiff to have knowledge of every last detail of a transaction." Fish v. GreatBanc Trust Co., 749 F.3d 671, 679 (7th Cir. 2014).  However, how to "characterize the relevant transaction and its essential facts," depends on "the complexity of the underlying factual transaction, the complexity of the legal claim, and the egregiousness of the alleged violation."  Martin, 966 F.2d at 1086.

In the present case, Plaintiff's legal claim and the underlying factual transaction, Defendant's procurement and delivery of Plaintiff's disbursement checks, are not complex.  Plaintiff clearly had "knowledge of the essential facts" of the claim prior to receiving Lempka's email in 2014.  As articulated by the Northern District of Illinois, in Neuma, Inc. v. Wells Fargo & Co., 515 F.Supp.2d 825, 852 (N.D. Ill. 2006), Plaintiff had "actual knowledge" of the alleged breach because Plaintiff had "actual knowledge of every fact [he] needed to assert [his] claim for breach of fiduciary duty, and indeed of every fact [he] now asserts in support of that claim."

First, Plaintiff explicitly alleges in the Complaint that he had knowledge of Heacox's failure to procure and deliver Plaintiff's

disbursement checks, as Plaintiff specifically alleges that he made "repeated requests" to Heacox concerning his checks through the fall of 1989.  The knowledge that Plaintiff had in 1989, which led him to make these repeated requests for his disbursement checks, is the same knowledge Plaintiff needed to assert his present claim and, therefore, supports a finding of "actual knowledge."  See Rush v. Martin Peterson Co., Inc., 83 F.3d 894, 896 (7th Cir. 1996) (analyzing a very general claim made by the plaintiff concerning his dissatisfaction with the amount of his profit-sharing fund after receiving his payout and, under the clearly erroneous standard, affirming the district court's finding that Plaintiff had actual knowledge when the plaintiff knew, at a point well before his payout, that payments were no longer being made into the plan on his behalf and that he was no longer eligible for the plan); Neuma, 515 F.Supp.2d at 852 (holding that, when the defendant allegedly breached its fiduciary duty by providing misinformation about the impending termination of an employee, which caused the employee's life insurance policy to lapse, the plaintiff had actual knowledge of the breach when the plaintiff was later informed that the policy had lapsed and that the policy lapsed as a result of the

employee's termination); Chao v. Wheeler, 2007 WL 4233464, at *6 (N.D. Ind. 2007) (holding, in a case where the plaintiff claimed that the defendant breached by failing to make 401(k) contributions, that the plaintiff had actual knowledge once he first knew that contributions were not being made).

Second, the only new information that Plaintiff alleges to have gained from Lempka's email is (1) that NRECA ordered the disbursement checks from its bank; and (2) the specific amount of the disbursement he should have received.  The information that Plaintiff received from Lemka is not "essential" to Plaintiff's claim because Plaintiff did not learn any new facts that he "needed to assert" his claim.  Neuma, 515 F.Supp.2d at 852.  Plaintiff claims only that Heacox failed to procure and deliver Plaintiff's disbursement checks.  As Plaintiff's alleged fiduciary, Heacox is responsible for Plaintiff allegedly not receiving his disbursement. Non-party NRECA's act in ordering the disbursement checks from its bank does not further support Plaintiff's claim that Heacox did not procure and deliver Plaintiff's disbursement checks.  Similarly, Plaintiff's knowledge of the amount of money in his pension accounts in 1989 is not "essential" because Plaintiff did not "need[

]" to assert the specific dollar amount in damages in order to "assert his claim." Plaintiff's claim, as articulated in his Complaint, rests exclusively on knowledge that he admits having in 1989: (1) that Plaintiff was entitled to receive a disbursement of his pension accounts; (2) that Heacox was the fiduciary responsible for procuring and delivering Plaintiff's checks; and (3) that Heacox failed to procure and deliver Plaintiff's checks.

Because Plaintiff had actual knowledge of the essential facts needed to assert his claim for breach of fiduciary duty in 1989, the three-year statute of limitations provided by ERISA expired in 1992. Therefore, Plaintiff's claim is time-barred and Plaintiff's Complaint must be dismissed.

Additionally, both parties address a claim by Plaintiff for denial of benefits under ERISA. However, this Court finds that Plaintiff does not attempt to plead a claim for denial of benefits under ERISA in the Complaint. Moreover, assuming that Plaintiff does state a claim for denial of benefits, Plaintiff's Complaint must still be dismissed because Plaintiff denial of benefits claim is also time-barred.

The parties agree that, in Illinois, the statute of limitations for a denial of benefits claim under ERISA is ten years.  See Rupert v. Alliant Energy Cash Balance Pension Plan, 726 F.3d 936 (7th Cir. 2013) (Because ERISA does not provide a statute of limitations for a denial of benefits claim, the court borrows a statute of limitations from an analogous state law."); Jenkins v. Local 705 International Brotherhood of Teamsters Pension Plan, 713 F.2d 247 (finding that a claim under Illinois contract law is the state cause of action most analogous to a denial of benefits claim under ERISA); 735 ILCS 5/13-206 (providing a ten year statute of limitations on "actions on…written contracts" in Illinois).  The issue before the Court is, again, when the statute of limitations accrued.  For Plaintiff's claim to survive, the statute of limitations had to accrue some time after November 20, 2005.

The parties further agree that, under Seventh Circuit precedent, the statute of limitations for an ERISA denial of benefits claim accrues "upon a clear and unequivocal repudiation of rights under the pension plan which has been made known to the beneficiary."  Thompson v. Retirement Plan for Employees of S.C. Johnson & Son, Inc., 651 F.3d 600, 604 (7th Cir. 2011).  Plaintiff

argues, however, that, although Defendant failed to pay Plaintiff the disbursement of his pension accounts for over fifteen years prior to November 20, 2005, Defendant's actions, or inaction, did not constitute "a clear and unequivocal repudiation" of Plaintiff's rights. Although no Seventh Circuit court has addressed a factual scenario that mirrors this one, the Sixth Circuit addressed the issue in Watkins v. JP Morgan Chase U.S. Benefits Executive, 570 Fed.Appx. 458 (6th Cir. 2014).

In Watkins, as in the present case, the plaintiff, in claiming denial of benefits under ERISA, alleged only that she never received her lump sum check from her employer. See id. at 459. The Sixth Circuit held that, in such a case, the statute of limitations accrued when the plaintiff "first elected to take a lump sum payment." Id. at 460. The court reasoned that "due diligence" required the plaintiff to discover that her employer had failed to send her the check some time during the eight years that she waited to file her lawsuit. Id.

Because the "clear repudiation" rule to determine when the statute of limitations accrues in an ERISA denial of benefits claim in the Sixth Circuit is identical to the rule used by the Seventh Circuit, this Court finds that the Sixth Circuit's holding in Watkins

is applicable here.  See Morrison v. Marsh & McLennan Companies, Inc., 439 F.3d 295, 302 (6th Cir. 2006) (The "clear repudiation rule" provides that the statute of limitations accrues "when a fiduciary gives a claimant *clear and unequivocal repudiation* of benefits.") (emphasis added); compare Thompson, 651 F.3d at 604 ("[A] claim to recover benefits under § 502(a) accrues upon a *clear and unequivocal* repudiation of rights under the pension plan which has been made known to the beneficiary.") (emphasis added) (internal quotations omitted).  Under the holding in Watkins, the statute of limitations for Plaintiff's denial of benefits claim accrued when Plaintiff "first elected to take a lump sum payment" on December 28, 1988 and, therefore,  the statute of limitations expired on December 28, 1998, almost seventeen years prior to Plaintiff's filing of this Complaint.  As a result, Plaintiff's denial of benefits claim is time-barred.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant's Motion to Dismiss (d/e 5) is GRANTED.  Plaintiff's Complaint (d/e 1) is DISMISSED WITH PREJUDICE.  This case is

CLOSED. Plaintiff's Motion for a status hearing (d/e 10) and Plaintiff Counsel's Motion to Withdraw (d/e 11) are DENIED AS MOOT.

ENTER: May 26, 2016.

s/ Sue E. Myerscough

SUE E. MYERSCOUGH

UNITED STATES DISTRICT JUDGE
